IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHRISTY PRUITT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:08CV211-SRW |
| ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Plaintiff Christy Pruitt brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income benefits under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On April 12, 2005, plaintiff filed an application for benefits under the Social Security Act, alleging that she had been disabled since April 1, 2004.[1] (R. 45). Plaintiff indicated that

---

[1] At the administrative hearing, plaintiff's counsel moved to modify the alleged onset date to "the last protective filing date." (R. 206). The ALJ treated plaintiff's alleged onset date as June 3, 2004, which coincides with the date of denial of plaintiff's previous application for benefits. (R. 19, 46).

she had worked at various temporary housekeeping jobs between 1989 and 2003 but that she had stopped working on April 1, 2004 due to her panic disorder, memory loss and artificial eye. (R. 48-49). She further stated that she had completed tenth grade in 1988, and that she had not attended special education classes. (R. 52).[2, 3]

Dr. Kumar, a general practitioner in Wetumpka, Alabama wrote in treatment notes for September 22, 2003 that plaintiff was drinking the previous night, had a seizure, and was treated in the emergency room. He diagnosed an anxiety reaction. (R. 143). Over the next few months, he called in prescription refills for Klonopin.[4] On March 5, 2004, plaintiff reported that she had been having "mood swings" for the previous two weeks, and that she was sad and having crying spells. Dr. Kumar added a prescription for Lexapro.[5] Dr. Kumar diagnosed chronic anxiety. (R. 141-43). On October 4, 2004, plaintiff complained of sleeplessness, reporting that she had been under increased stress due to her family situation. Dr. Kumar diagnosed anxiety and depression and increased her prescription for Lexapro. In January and March 2005, Dr. Kumar's office called in another prescription for Klonopin.

---

[2] Plaintiff was born on July 26, 1974. (R. 45, 208).

[3] Plaintiff states the general issue as whether the ALJ's decision is supported by substantial evidence and whether improper legal standards were applied. However, plaintiff's sole allegation of error is that the ALJ failed in his duty to develop the record as to plaintiff's mental functioning. The court has reviewed and considered all of plaintiff's testimony and all of the evidence of record. However, the court here sets forth only the evidence which is arguably relevant to plaintiff's mental status or to her contention that the ALJ erred by failing to order IQ testing or obtain plaintiff's school records. (See Plaintiff's brief, pp. 5-7).

[4] Klonopin is indicated for treatment of seizure disorders and panic disorder. *Physician's Desk Reference* (63rd ed. 2009) at p. 2639. Dr. Kumar also prescribed medication for hypertension.

[5] Lexapro is indicated for treatment of major depressive disorder. *Physician's Desk Reference* (63rd ed. 2009) at p. 1175.

(R. 139-140). Plaintiff reported to American Family Care for treatment of her back pain on April 4, 2005; the intake note indicates that plaintiff provided a medical history including treatment by Dr. Keys, a psychiatrist in Birmingham and by the Mental Health Clinic in Montgomery. (R. 137-138).[6] Her primary complaint was of back pain, but her diagnoses included "Anxiety [with] Depression." (R. 138).

On August 8, 2005, the Commissioner referred plaintiff to Karl Kirkland, Ph.D. for a consultative examination "[t]o evaluate the patient's overall functioning in a comprehensive fashion." (R. 149). Dr. Kirkland noted plaintiff's report that she had stopped working three years previously due to severe panic attacks. He further indicated that she "has no history of private psychological care but has been to the Mental Health Center in the past" and also that she reported that "she is able to manage financial benefits." Plaintiff told Dr. Kirkland that she had "dropped out of school in the 7th grade when she lost her eye in the bottle rocket accident" and that she "never went back after her recovery from this accident." Dr. Kirkland administered the WRAT-3 reading scale and determined that plaintiff is reading on a third grade level. (R. 150). Dr. Kirkland stated:

> Christy Pruitt reports anxiety attacks and depression. She reports that she is easily irritated and angry. As a result, she has a tendency to avoid people. She has become increasingly withdrawn. Her current diagnostic profile meets criteria for depression. She reports problems with energy and experiencing pleasure. She has problems with sleep disturbance and early morning fatigue as well as previous awakenings.
>
> Christy Pruitt is capable of managing financial benefits. She has worked following her loss of vision in the left eye, but she is now scared of losing

---

[6] Plaintiff did not provide any records from Dr. Keys or the mental health clinic, and there is no indication as to when this treatment occurred.

vision in her right eye as well.

(R. 151). Dr. Kirkland's Axis I diagnoses were major depression and generalized anxiety disorder, and on Axis III he diagnosed "Loss of vision in left eye secondary to bottle rocket accident (1988)." He made no Axis II diagnosis, noting only "No Known Code." (R. 151).

Plaintiff sought treatment from her primary care physician, Dr. Trinidad, between October 2003 and December 2006. Plaintiff complained to Dr. Trinidad of insomnia in July 2005. (R. 188). Her chief complaint in an April 21, 2006 office visit was that she was "stressed," and she reported that she was talking to a counselor. Dr. Trinidad diagnosed insomnia and depression and advised her to follow up with the counselor. (R. 158). On August 17, 2006, plaintiff told Dr. Trinidad that she was seeking counseling in Mental Health and would see Dr. Das for the first time on August 24, 2006. Dr. Trinidad diagnosed hypertension and anxiety. (R. 155). On November 20, 2006, plaintiff told Dr. Trinidad that she was not sleeping well. He diagnosed insomnia and hypertension. (R. 197). On December 12, 2006, plaintiff's chief complaint was "anxiety attacks." She reported being unable to sleep. Dr. Trinidad noted that she "has appt to see Mental Health next [illegible]," for the "1st time." Dr. Trinidad diagnosed insomnia, anxiety and hypertension. (R. 199).

On January 18, 2007, after plaintiff's claim was denied at the initial administrative level, an ALJ conducted an administrative hearing. Plaintiff was represented at the hearing by an attorney, Anthony George. (R. 206). Plaintiff's attorney argued that plaintiff reads at a third grade level, has an artificial left eye due to a fireworks accident in 1988, has headaches and hypertension, and has been diagnosed with major depression, anxiety, and

4

mood disorder. He indicated the nature of plaintiff's impairments as "mainly her back," noting that she had back surgery after a motor vehicle accident in 1991 and now has degenerative disk disease. (R. 207).

At the hearing, plaintiff testified that she had attended "maybe two weeks" in the tenth grade, but had completed ninth grade and that she is "barely" able to read and write. (R. 208). Plaintiff testified that she spends four to five hours a day on her couch, due to pain in her back and legs, and that she "love[s] to read [her] bible or watch tv." (R. 210). She takes Goody's powder, Advil, Excedrin Migraine or Lortab for the pain and for headaches. (R. 211-212). She does not have a driver's license, but took the oral test once and the written test four times. (R. 212).[7] Plaintiff testified that she stopped working as a cashier at McDonald's because she could not give change, and that she is still unable to make change. (R. 213). She testified that she stopped working in the housekeeping jobs because of the migraines, pain and because she "got mad too easy" and "[c]ouldn't concentrate." (R. 212). Plaintiff testified that she is depressed and "cr[ies] a lot" and that her mental impairments and pain affect her ability to concentrate. She testified that she has not sought treatment from a mental health professional because she does not have insurance. (R. 214-15).

The ALJ rendered a decision on March 8, 2007. He concluded that plaintiff suffered from the severe impairments of "degenerative disc disease of the lumbar spine; a history of seizure disorder, but she is on no medications currently; cephalgia (migraine headaches);

---

[7] Plaintiff's attorney asked, "You never did pass it?" but there is no response to the question – verbal or nonverbal – indicated in the transcript. (R. 212). For purposes of this review, the court infers that plaintiff did not pass the test.

5

blind in the left eye; borderline intellectual functioning (based on her testimony); and hypertension." (R. 28). He found that plaintiff's impairments, considered in combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform her past relevant work as a cleaner/housekeeper, as well as other light exertional jobs existing in significant numbers in the national economy. Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. On January 25, 2008, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ stands as the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails

to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

"[R]egardless of whether a claimant is represented by counsel, the ALJ 'has a duty to develop a full and fair record.'" George v. Astrue, 2009 WL 1950266, *2 (11th Cir. Jul. 8, 2009)(citing Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995)). Remand is not required, however, unless the administrative record as a whole is "inadequate or incomplete or 'show[s] the kind of gaps in the evidence necessary to demonstrate prejudice.'" George, 2009 WL 1950266 at *2 (citing Graham v. Apfel, 129 F.3d 1420, 1423 (11th Cir. 1997)). "Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits. The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253, 1269 (11th Cir. 2007)(citing Doughty v. Apfel, 245 F.3d 1274, 1281 (11th Cir. 2001)). Plaintiff argues that "the ALJ failed to properly develop the claim in failing to order IQ testing to determine exactly Plaintiff's mental functional level. In addition, there should surely have been some effort made to locate school records, or at the very least some inquiry into whether plaintiff had required any special academic assistance while enrolled in school." (Plaintiff's brief, p. 6).

Plaintiff indicated, at the time of her application, that she had completed tenth grade

in 1988 and did not attend special education classes. (R. 52). At the hearing, she testified that she had begun tenth grade but had not completed it. (R. 208). She testified that she is "barely" able to read and write (id.), and Dr. Kirkland concluded, after administering the WRAT-3, that plaintiff reads on a third grade level. (R. 150). Plaintiff testified that she left her job as a cashier at McDonald's because she is unable to make change. (R. 213). The ALJ concluded, on the basis of plaintiff's testimony, that she has borderline intellectual functioning. (R. 28). Plaintiff contends that the ALJ had insufficient evidence on which to base this conclusion and that he should have sought school records and ordered IQ testing.

Plaintiff argues that "the testing of the consultative examiner revealing abnormal reading skills should have been sufficient to trigger the need for more thorough psychometric testing." (Plaintiff's brief, p. 6). However, the Commissioner referred plaintiff to Dr. Kirkland for a consultative mental status examination "to evaluate the patient's overall functioning in a comprehensive fashion." (R. 149). Dr. Kirkland concluded that plaintiff is capable of managing financial benefits, did not make a diagnosis of mental retardation on Axis II,[8] and did not conduct or recommend further testing. The record includes no indication that plaintiff left school because of her intellectual capacity; plaintiff told Dr. Kirkland that she did not go back to school after her recovery from the bottle rocket accident. (R. 150). Additionally, plaintiff testified that she loves to read her bible. (R. 210).

Significantly, plaintiff worked at various housekeeping jobs between 1988 – when she quit attending school – and 2003. Even assuming that plaintiff required some sort of special

---

[8] "Axis II is for reporting Personality Disorders and Mental Retardation." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed) at p. 28.

assistance in school or that her IQ is low enough to support a diagnosis of a more severe limitation than "borderline intellectual functioning" – *i.e.*, mental retardation – plaintiff's intellectual capacity did not preclude her performance of work as a housekeeper. See Kennedy v. Astrue, 2009 WL 1311554 (M.D. Ala. May 11, 2009)(absent evidence of deterioration of claimant's intellectual functioning, ALJ was not required to order consultative psychological examination in order to have sufficient evidence to determine that plaintiff could return to her past relevant work as a cook); McCray v. Massanari, 175 F.Supp.2d 1329, 1339 (M.D. Ala. 2001)("During the administrative proceedings which preceded the hearing before the ALJ, McCray did not allege mental retardation as the basis for his disability claims, and he did not request an IQ test.  At the hearing, McCray and his attorney raised the possibility only that he was illiterate, but not that he was retarded.  The ALJ did not have a responsibility to guess that alleged mental retardation formed the basis for McCray's disability claims."); see also Harper v. Barnhart, 176 Fed. Appx. 562, 567 (5th Cir. 2006)(unpublished opinion)("[P]laintiff-Appellant argues that the ALJ failed to address the limitations arising from her special education. Despite her educational limitations, Plaintiff-Appellant worked as a home health care attendant and a hotel maid before the onset of disability. Plaintiff-Appellant . . . has not shown how her 'less-than-high-school' education affects her ability to perform the jobs suggested by the vocational expert, or how these jobs require more intellectual ability than did her past relevant work as a home health care attendant and a hotel maid.")(citing Perez v. Barnhart, 415 F.3d 457 (5th Cir. 2005)).

      The record before the ALJ was sufficient to support his conclusion that plaintiff had

the intellectual capacity to perform her past relevant work as a "cleaner/housekeeper." His failure to order IQ testing or obtain school records does not, therefore, constitute reversible error.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the Commissioner's decision is supported by substantial evidence and the proper application of law and that it is due to be AFFIRMED.  A separate judgment will be entered.

Done, this 1st day of October, 2009.

                                        /s/ Susan Russ Walker
                                        SUSAN RUSS WALKER
                                        CHIEF UNITED STATES MAGISTRATE JUDGE